`

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Doctors Nursing and Rehabilitation Center, LLC, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 1:16-cv-9837 No. 1:16-cv-9842 |
| Felicia F. Norwood, in her official capacity as the Director of Illinois Department of Healthcare and Family Services, | ) ) ) ) ) ) | No. 1:16-cv-9922 No. 1:16-cv-10255 No. 1:16-cv-10614 No. 1:17-cv-104 No. 1:17-cv-640 |
| Defendant, | ) ) ) | No. 1:17-cv-1750 |
| and related cases. | ) | |

<u>Memorandum Opinion and Order</u>

In these related actions, several healthcare providers and
their patients sue Felicia Norwood, Director of the Illinois
Department of Healthcare and Family Services ("HFS"), in her
official capacity, seeking declaratory and injunctive relief for
violations of Title XIX of the Social Security Act (the
"Medicaid Act") and its implementing regulations, the Americans
with Disabilities Act ("ADA"), the Rehabilitation Act, and the
Fourteenth Amendment. Before me is plaintiffs' motion for a
preliminary injunction requiring defendant Norwood to process

Medicaid applications and to provide Medicaid benefits with reasonable promptness in accordance with the Medicaid Act and timeliness standards set by federal regulations. [Case No. 1:16-cv-9837, ECF. No. 14]. For the reasons that follow, I grant plaintiffs' motion to the extent described below.

I.

Medicaid is an optional, cooperative federal-state healthcare program for providing medical assistance to needy individuals. *Wilder v. Va. Hosp. Ass'n.*, 496 U.S. 498, 502 (1990). If a state elects to participate in the Medicaid program, as Illinois has, it must create a state plan that complies with the Medicaid Act and federal regulations. *Id.* In Illinois, the Department of Healthcare and Family Services is responsible for supervising and administering the state's Medical Assistance program. 305 ILCS §§ 5/2-12(3), 5/5-1 *et seq.; see* 42 U.S.C. § 1396a(a)(5).

These related cases concern Illinois's provision of Medicaid benefits and the timeliness requirements for approving and providing such benefits. Plaintiffs in these matters are residents ("patient plaintiffs") of twenty-four hour, long-term nursing care facilities who seek long-term care benefits under Illinois's state Medicaid plan and the healthcare providers ("facilities" or "institutional plaintiffs") that operate these nursing facilities. The patient plaintiffs fall into two major

categories: (1) those who are awaiting Medicaid or long-term care eligibility determinations, and (2) those who, despite receiving approval, are still awaiting long-term care benefits.

Plaintiffs bring suit against Felicia Norwood, the Director of HFS, in her official capacity, because, they allege, she has failed to process plaintiffs' Medicaid applications and to provide Medicaid benefits with reasonable promptness, as required by the Medicaid Act and its implementing regulations. According to plaintiffs, HFS violates the regulatory timeliness requirements whenever it takes longer than ninety days to make a benefit eligibility determination and whenever it takes longer than twelve months to process and furnish payment for Medicaid benefits. Plaintiffs additionally assert that defendant Norwood's inaction violates the ADA, Section 504 of the Rehabilitation Act, and the Equal Protection Clause of the Fourteenth Amendment.

Plaintiffs ultimately seek injunctive and declaratory relief to compel defendant's future compliance with the regulatory time limits for determining applicant eligibility and processing claims. In the interim, they seek preliminary injunctive relief because, they assert, the patient plaintiffs require the twenty-four hour nursing care they are currently receiving, have no means of paying for it, and are now in danger of losing it. *See, e.g.*, Reis Decl. ¶¶ 3-5, 9 [Doc. No. 35-3];

Hart Decl. ¶¶ 3-5, 9 [Doc. No. 35-5]; Crowder Decl. ¶¶ 3-5, 9 [Doc. No. 35-6]. They seek preliminary relief to prevent irreparable harm to these individuals.

On August 22 and 23, 2017, the parties presented evidence in a hearing on plaintiffs' preliminary injunction motion. Plaintiffs called five witnesses: Christopher Ries, the vice president of Carlyle Health Center and St. Vincent's Home ("Carlyle"), who gave testimony concerning five of the patient plaintiffs in Case No. 16-cv-9842; Donna Passini, business office manager of Regency Care of Morris ("Morris"), who testified about fifteen patient plaintiffs in Case No. 17-cv-640; Lisa Gordon, collections manager for Heritage Enterprises ("Heritage"), who presented evidence regarding twelve of the named plaintiffs in Case No. 16-cv-10614;[1] Gail McGinnis, collection director for Petersen Healthcare ("Petersen"), who gave testimony concerning thirty-one Petersen residents who are

---

[1] In a June 23, 2017, order, I certified a class of residents in Case No. 16-cv-10614 according to the following definition:

> All disabled and/or medically needy persons who require long term care at a skilled nursing facility and are residing at a skilled nursing facility managed and operated by Heritage Operations Group, LLC, who are eligible for Medicaid and who submitted Medicaid applications and either 1) have not received a determination on their application by Defendant within forty-five days of submitting their application, or 2) who were approved for Medicaid benefits, and who have not received payment for their nursing care within twelve months of the date that benefits were approved to begin.

plaintiffs in Case No. 16-cv-9922; and Kayla Klauser, director of accounting at Sunset Home ("Sunset"), who presented evidence concerning three patient plaintiffs in Case No. 17-cv-104.[2] Together, plaintiffs' witnesses presented testimony and hundreds of pages of documents in support of sixty-six patient plaintiffs' claims.

Defendant called two witnesses. HFS's Manager of Policy and Rules for the Bureau of Long-Term Care Janene Brickey gave testimony about a chart she compiled (Defendant's Exhibit 1) with data she gathered from the state's Medicaid databases about the patient plaintiffs' application statuses. Defendant's other witness, Mark McCurdy, the Acting Bureau Chief of the Bureau of Long-Term Care, discussed another demonstrative exhibit (Defendant's Exhibit 2), which compiles the state's data concerning long-term benefit claims it has paid.[3] Although these witnesses both gave testimony concerning information they had personally gathered from the state's electronic databases, both

---

[2] Plaintiffs did not call witnesses or present evidence concerning three of the captioned cases: *Doctors Nursing & Rehab. Ctr.*, Case No. 16-cv-9837, *Lexington Health Care Ctr.*, Case No. 16-cv-10255, and *Generations Rock Island*, Case. No. 17-cv-1750. I will assume that this is because plaintiffs no longer seek preliminary injunctive relief in these matters.

[3] Defendant moved to enter both demonstrative exhibits into evidence pursuant to F.R.E. 1006. Although plaintiffs' counsel had not been afforded an opportunity to examine the underlying data, she explained that she had no reason to believe the exhibits inaccurately represented the information in the state's databases. Instead, she argued the witnesses had no personal knowledge of the underlying facts of each applicant's case.

admitted that they could not speak from personal knowledge as to any particular plaintiff. They could only speak to the information contained in the state's databases, not how that information arrived there.

Of the patient plaintiffs discussed at hearing, plaintiffs assert that twenty-one[4] of them have not received Medicaid or long-term care eligibility determinations despite applying for benefits more than ninety days ago. To support these claims, plaintiffs offered the testimony described above, and, in most cases, documentation showing application dates, information requests, and any other status updates plaintiffs received. At the hearing, defendant disputed the status of many of these applications and offered explanations for the delay with respect to the others. She identified two applicants – A. Hanks and L. DeChausse – as deceased.[5] She also indicated that five applicants – C. Gleason, D. Katner, C. Marcoux, D. Cargnoni, and H. Mahair – were recently approved. The other fifteen patient plaintiffs in this group have either had their applications denied,[6]

_____

[4] Plaintiffs actually presented evidence regarding twenty-two applicants but then informed the court that they received a denial notice for R. Lake's application on August 23, 2017.

[5] Plaintiffs' evidence indicates that F.J. Rush is also deceased.

[6] These individuals are B. Ostermueller, R. Lynes, F. Stroud, B. Noel, A. Martinez, J. Watson, S. Vogel, R. Gilbertson, and C. Doss.

canceled,[7] or sent to HFS's Office of Inspector General ("OIG") for review,[8] according to defendant. Conversely, plaintiffs contend that several denied applications were reopened, that several purported denial or cancellation notices were never received, that at least one applicant had multiple pending applications, and that regulatory time limits were not reset by OIG's involvement.

The remaining forty-four patient plaintiffs discussed at the evidentiary hearing are those who, plaintiffs argue, have not had their claims for long-term care benefits promptly paid in the twelve months permitted by regulations. Based on the evidence presented at hearing, it appears that at least eleven, and perhaps thirteen, of these plaintiffs are now deceased.[9] Another eight of the individual plaintiffs identified do not have any pending claims for services older than twelve months.[10] Excluding these groups, plaintiffs have presented testimony and documents showing that at least twenty-seven patient plaintiffs in this category have been approved for Medicaid full coverage

---

[7] The three purportedly canceled applications were for D. James, M. Urban, and B. Lawrence.

[8] According to defendant, OIG is currently reviewing applications for G. Ostermueller at Carlyle and F.J. Rush at Heritage.

[9] The deceased plaintiffs are S. York, E. Kuchar, D. Pogliano, P. Schmidt, E. Buckley, D. Rose, D. Frazier, E. Elliott, R. Biggins, W. Kaufman, and S. Wrone. Plaintiffs' hearing documents also suggest that R. Hess and R. McGrew may have also passed away.

[10] These individuals are A. Blunt, D. Burkhart, H Choudin, K. Reitz, P. Fawbush, R. Brinkley, O. Ishmael, and W. Suckrach.

or long-term care benefits or both, and have unpaid claims for service periods more than twelve months old. According to plaintiffs' evidence, some of these individuals received approval notices more than twelve months ago and are still awaiting payment for services predating approval.[11] Others have received approval notices more recently, but still have unprocessed claims for service periods more than a year old.[12]

In response, defendant elicited testimony concerning the differences between the Medicaid eligibility process and the process for approving an applicant's long-term care benefits. Defendant also offered testimony about the changes in claim processing that have taken place in the last year. According to Mr. McCurdy, claims for long-term care services performed before December 1, 2016, cannot be paid until a beneficiary is approved and added to a facility's roster. Hr'g Tr. vol. 2, 50-54 (Aug. 23, 2017). For these pre-December 2016 services, HFS is responsible for generating the actual claims for payment based on the information it has in its system. *Id.* HFS then processes these claims and sends them to the Illinois Comptroller's office for payment. Claims for benefits after December 1, 2016, on the

---

[11] This group includes D. Virkler, N. McKinzie, D. Simpson, M. Steffan, W. Toufexis, W. Taylor, D. Anderson, M. Grasseschi, J. Icenogle, V. Lane, L. Morgan, A. Turner, A. Winters, C. Merry-Azimi, E. Smith, and R. Strickle-Solin.

[12] These eleven individuals are R. Dragon, J. Adkins, D. Hall, B. Kroll, S. Case, R. Pursell, T. Mercier, C. Mondy, M. VanWinkle, L. Koehler, and G. Fathauer.

other hand, are left to healthcare providers to generate and submit to HFS. *Id.* Finally, through Mr. McCurdy, defendant provided some information in Defendant's Exhibit 2 concerning payments that have been made for certain members of this group awaiting benefits. Comparing this information with the plaintiffs' evidence, however, it appears there are still claims pending for most of these individuals.

## II.

To determine whether a moving party is entitled to a preliminary injunction, courts evaluate whether the party has demonstrated: (1) a likelihood of success on the merits; (2) a likelihood that he will "suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of the equities tips in his favor"; and (4) "that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992). A court deciding whether to grant a preliminary injunction "weighs all four factors ... seeking at all times to minimize the costs of being mistaken." *Abbott Labs.*, 971 F.2d at 12 (internal quotation marks omitted). Because these considerations are "interdependent," a court may determine that a greater showing as to one factor may lessen the showing needed for another. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010).

In the instant actions, plaintiffs move for a preliminary injunction addressing individual patient plaintiffs in seven related cases and a class of approximately three hundred patients in a related class action. Because the claims in these cases are the same, I will examine the preliminary injunction factors for both categories of claims – pending applications and pending payments – generally.

A. Likelihood of Success on the Merits

To show that preliminary injunctive relief is appropriate, plaintiffs must demonstrate that they are likely to succeed on the merits of their claims. The threshold for this requirement is low. *D.U. v. Rhoades*, 825 F.3d 331, 338 (7th Cir. 2016) (citing *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011)). To satisfy their burden, plaintiffs "must show that [they have] a 'better than negligible' chance of success on the merits of at least one of [their] claims." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008) (quoting *Ty, Inc. v. Jones Grp.*, Inc., 237 F.3d 891, 897 (7th Cir. 2001)). If plaintiffs can show that they have at least "some likelihood of success on the merits," they will meet this threshold requirement. *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 678 (7th Cir. 2012).

Plaintiffs of course argue that they are likely to succeed on all of their claims, but, for present purposes, I assess the likelihood that they will succeed on their section 1983 claims alleging violations of the Medicaid Act's reasonable promptness requirement, the cause of action at the center of these lawsuits. According to plaintiffs, defendant has violated 42 U.S.C. § 1396a(a)(8), which requires state Medicaid agencies to "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." Plaintiffs argue — and I agree — that section 1396a(a)(8) creates enforceable rights that may be pursued through section 1983 actions. *See* Mem. Op. & Order [Doc. No. 50] at 17 (June 7, 2017). To prevail on these section 1983 claims, plaintiffs will need to prove that defendant Norwood, in her capacity as HFS Director, has deprived them of their rights to reasonably prompt Medicaid eligibility determinations and benefits pursuant to section 1396a(a)(8).

Defining "reasonable promptness" is key to determining whether section 1396a(a)(8) has been violated. The accompanying federal regulations provide some clarity. In the eligibility determination context, the regulations require that state Medicaid agencies establish certain timeliness and performance standards for processing Medicaid applications. *See* 42 C.F.R. §

435.912. These mandatory timeliness standards permit agencies no more than ninety days to determine the eligibility of applicants who apply for Medicaid on the basis of disability and forty-five days to determine the eligibility of all other applicants. 42 C.F.R. § 435.912(c)(3). Because all plaintiffs in these cases applied based on disability, only the ninety-day requirement is involved. Hr'g Tr., vol. 1, at 6 (Aug. 22, 2017). According to the regulations, these timeliness requirements "cover the period from the date of application ... to the date the agency notifies the applicant of its decision." 42 C.F.R. § 435.912(c)(1). In other words, after a Medicaid applicant submits an application, a state agency may take no more than ninety days to notify the applicant, or the applicant's designated recipient,[13] of the agency's eligibility determination in order to meet the reasonable promptness requirement.[14] The only permissible

---

[13] Pursuant to the Medicaid regulations, an applicant may "designate an individual or organization to act responsibly on [his] behalf in assisting with [his] application and renewal of eligibility and other ongoing communications with the agency." 42 C.F.R. § 435.923(a)(1). Applicants may authorize their representatives to perform various Medicaid-related tasks, including receiving copies of notices and other communications from the state agency. 42 C.F.R. § 435.923(b)(3). Pursuant to 42 C.F.R. § 435.917, state agencies "must provide all applicants and beneficiaries with timely and adequate written notice of any decision affecting their eligibility, including an approval, denial, termination or suspension of eligibility, or a denial or change in benefits and services."

[14] At hearing, the parties disagreed about the state agency and the applicant's respective burdens regarding the collection of information needed to determine eligibility. The federal

exceptions to these timeliness standards are for "unusual circumstances," which include instances where an agency cannot reach a determination because an applicant or examining physician fails to take a required action, or where there is an emergency "beyond the agency's control." 42 C.F.R. § 435.912(e).

Defendant argues that these timeliness standards apply only to initial determinations of Medicaid eligibility and not to decisions regarding the provision of specific benefits under state healthcare programs like long-term care benefits. Despite defendant's contentions, the regulations do not appear to carry this limitation. According to 42 C.F.R. § 435.911, a regulatory section implementing 42 U.S.C. § 1396a(a)(8) as well as § 1396a(a)(10)(A), which requires the provision of skilled nursing services to eligible individuals, Medicaid agencies must "promptly and without undue delay consistent with [the section 435.912] timeliness standards ... furnish Medicaid to eligible

---

regulations permit the state agency to "accept attestation of information needed to determine the eligibility of an individual for Medicaid ... without requiring further information (including documentation) from the individual." 42 C.F.R. § 435.945(a). State Medicaid agencies are required to request financial information from other state agencies and to check federal electronic databases for required information. 42 C.F.R. §§ 435.948-435.949, 435.956. The agency must promptly evaluate information gathered to determine its effect on eligibility. 42 C.F.R. § 435.952(a). The agency must not require an individual to provide additional information or documentation "unless information needed by the agency ... cannot be obtained electronically or the information obtained electronically is not reasonably compatible." 42 C.F.R. § 435.952(c).

individuals" who submit applications for benefits. 42 C.F.R. §
435.911(c)(1); *see also* 42 C.F.R. § 435.930 ("The agency must—
(a) Furnish Medicaid promptly to beneficiaries without any delay
caused by the agency's administrative procedures; (b) Continue
to furnish Medicaid regularly to all eligible individuals until
they are found to be ineligible...."). If Medicaid benefits must
be promptly furnished to eligible individuals consistent with
the timeliness standards, then it stands to reason that state
agencies must also render long-term care eligibility
determinations within ninety days of the date of application for
these benefits.

With respect to the provision of benefits, the regulations
also impose requirements for the timely processing of Medicaid
claims for payment. Pursuant to 42 C.F.R. § 447.45(d),[15] state
agencies must pay all Medicaid claims within twelve months of
the date of receipt. Plaintiffs contend that, under this
regulation, any unpaid claims for service dates more than twelve

---

[15] It should be noted that 42 C.F.R. § 447.45 implements 42
U.S.C. § 1396a(a)(37), a section of the Medicaid Act not at
issue in this lawsuit. These provisions focus on processing
provider claims, rather than providing services to individuals.
However, because 42 U.S.C. § 1396a(a)(8) requires that "medical
assistance" be "furnished with reasonable promptness" and 42
U.S.C. § 1396d(a) defines "medical assistance" as "payment of
part or all of the cost of the following care and services or
the care and services themselves, or both," I will analyze
section 447.45's timely processing requirements, which concern
payments for medical assistance, as part of HFS's reasonable
promptness obligation. Defendant has not disputed section
447.45's applicability.

months old violate the reasonable promptness requirement. Defendant conversely argues that the agency's payment window does not expire until twelve months after a claim is received. To this point, plaintiffs respond that, under HFS's payment system, only HFS can generate claims for services predating December 1, 2016. Starting the twelve-month payment window from the date HFS receives a claim that only HFS can generate would permit the agency to indefinitely delay the delivery of Medicaid benefits, plaintiffs argue. Because providers are unable to submit actual claims for long-term care services before December 1, 2016, it is appropriate to count the claim processing timeline not from the date the agency generates a claim, but from the date it receives notice of the request for payment.[16] This way, "any delay caused by the agency's administrative procedures" will be resolved against the defendant, rather than beneficiaries. 42 C.F.R. § 912.930. Thus, for purposes of determining which patient plaintiffs have claims that have been pending for more than twelve months, I will consider the date of services to be the operative date so long as the patient plaintiff had an application for long-term care services approved or pending for more than ninety days at the time of

---

[16] The federal regulations clearly contemplate a process where providers are able to submit claims for payment. *See* 42 C.F.R. §447.45(d)(1) (imposing time limits on providers submitting claims); 42 C.F.R. §447.45(d)(4)-(5) (calculating agency payment time limits from "the date the agency receives the claim").

those services that would have put the agency on notice of the claim.

In sum, a violation of section 1396a(a)(8)'s reasonable promptness requirements may be shown when an application for Medicaid or long-term care eligibility has been pending for more than ninety days or when a claim for payment for medical assistance goes unpaid for more than twelve months after the agency has notice, as described above. If any of the individual plaintiffs in these cases can show either type of delay, then they will pass the threshold inquiry because they have "a better than negligible chance" of succeeding on at least one of their claims. *Girl Scouts*, 549 F.3d at 1096. Likewise, if the named plaintiffs in *Heritage* can make either of these showings, it may be appropriate to preliminarily enjoin defendant's conduct as to the *Heritage* class.

At hearing, plaintiffs provided enough evidence to demonstrate that they have at least some likelihood of success on these section 1983 claims for certain plaintiffs. I begin with a few examples from the group of patient plaintiffs still awaiting eligibility determinations. G. Ostermueller is a plaintiff in *Carlyle Healthcare Ctr.*, 16-cv-9842. According to plaintiffs' evidence, Mr. Ostermueller applied for benefits on March 25, 2016. As of the hearing on August 22, 2017, he had not received an eligibility determination. In other words, he has

waited seventeen months for a determination. This is far beyond the ninety days permitted by 42 C.F.R. § 435.912. Defendant submits that Mr. Ostermueller's case is pending with the OIG, but nothing in the regulations authorizes an extension of the eligibility determination time limits for OIG review. The defendants have not submitted evidence of any delay caused by plaintiffs that would qualify for an exception under 42 C.F.R. § 435.912(e). Mr. Ostermueller therefore has demonstrated some likelihood of success on his claim.[17]

Other plaintiffs with pending applications include D. Jones from *Sunset Home*, 17-cv-104, and J. Watson from *Morris,* 17-cv-640. Plaintiffs presented evidence at hearing that Ms. Jones applied for Medicaid on June 2, 2016, and that Mr. Watson applied a month later on July 6, 2016. Plaintiffs' witnesses testified that neither Jones nor Watson had received eligibility determination notices as of the August 22, 2017, hearing. Defendant's demonstrative exhibits indicate that Ms. Jones's application was canceled for some unknown reason and that Mr. Watson's application was denied as of November 2016. The

---

[17] The one other application identified as pending with the OIG is for named plaintiff F.J. Rush from the *Heritage* class. Although it was not addressed at hearing, it appears from plaintiffs' documents that Ms. Rush has been deceased since May 2017. Preliminary injunctive relief would thus be inappropriate for this individual. As she is the only *Heritage* class representative with a pending application claim, plaintiffs will need to substitute another named plaintiff to make preliminary injunctive relief appropriate for this subclass.

timeliness requirements, however, apply from the date of application until the date an applicant is *notified* of the agency's decision. 42 C.F.R. § 435.912(c)(1). Because there is no evidence that D. Jones, J. Watson, and others[18] were ever notified of the agency's determination, it is possible that they may prevail on their section 1983 claims.

Finally, there is another group of patient plaintiffs who, although they received determinations, assert that their cases have since been "reopened," thus resetting the ninety-day clock. For two of these individuals, F. Stroud and R. Lynes, plaintiffs have not shown that their cases were reopened. In another case, that of B. Ostermueller, the application was reopened too recently to show a violation of the ninety-day time limit. There is one individual, however, B. Noel, who, after receiving a denial in January of 2017, requested that her case be reopened and has since received several requests for additional information from defendant's agents. These subsequent requests suggest that defendant reopened the case in January of 2017. If HFS is treating Ms. Noel's application as open, the timeliness standards in 42 C.F.R. § 435.912 apply.

---

[18] This includes A. Maritnez, S. Vogel, M. Urban, and B. Lawrence. R. Gilbertson is not included in this group because plaintiffs' documents indicate that he received a determination in January 2017.

Because the plaintiffs discussed above have waited, in many cases, far more time than is permitted by the Medicaid regulations to receive the Medicaid determinations and benefits to which they claim to be entitled, they have at least some likelihood of showing that defendant Norwood has violated section 1396a(a)(8) of the Medicaid Act by failing to render eligibility determinations in her capacity as the director of HFS.

Plaintiffs also presented enough evidence to demonstrate a likelihood of succeeding on the other group of patient plaintiffs' section 1983 claims, those concerning the failure to promptly provide long-term care benefit payments. As discussed above, I evaluate these claims based on the date of services, so long as the agency had notice at the time of the services, because testimony revealed that providers were unable to submit claims before December 1, 2016. In my review of plaintiffs' evidence, I find twenty-seven individuals[19] who have unpaid claims for services that are more than twelve months old. All of these individuals applied for long-term benefits more than one

---

[19] *Heritage*, 16-cv-10614: (1) R. Dragon, (2) J. Adkins, (3) D. Hall, (4) B. Kroll, (5) S. Case, (6) R. Pursell, (7) D. Virkler, (8) N. McKinzie, and (9) W. Taylor. *Petersen*, 16-cv-9922: (10) D. Simpson, (11) M. Steffan, (12) W. Toufexis, (13) T. Mercier, (14) C. Mondy, (15) M. VanWinkle, (16) L. Koehler, (17) G. Fathauer, (18) D. Anderson, (19) M. Grasseschi, (20) J. Icenogle, (21) V. Lane, (22) L. Morgan, (23) A. Turner, (24) A. Winters, (25) C. Merry-Azimi, and (26) E. Smith. *Morris*, 17-cv-640: (27) R. Strickle-Solin.

year ago, have since been approved for these benefits, and have not yet received the medical assistance that is due for service periods the agency has been aware of for twelve months or more. Because the agency has had notice of these medical assistance claims for longer than the timeliness requirements allow, defendant Norwood's delay in paying arguably violates Medicaid's reasonable promptness requirement.

At the evidentiary hearing, defendant provided various explanations for the delays in processing claims. Some claims are waiting to be paid by the Illinois Comptroller's office, and some claimants have not had their long-term care eligibility processed until recently. These circumstances, however, do not negate the evidence that the medical assistance that these individuals have been approved to receive has not been furnished with reasonable promptness.

In addition to her individualized explanations for delays in claim processing, defendant raises another more fundamental concern in her response brief that, in her view, prevents these patient plaintiffs from prevailing on the merits of their claims. As she argued in her motion to dismiss, defendant Norwood asserts that, at bottom, plaintiffs seek retroactive payments from the state, which are barred by the Eleventh Amendment. Defendant is correct that the Eleventh Amendment bars claims for retroactive money damages against the state. *See*

*Edelman v. Jordan,* 415 U.S. 651, 663 (1974); *BT Bourbonnais Care, LLC v. Norwood,* No. 16-3655, 2017 WL 3392101, at *6 (7th Cir. Aug. 8, 2017); *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1050 (7th Cir. 2013). As I explained in my June 7, 2017, memorandum opinion and order [Doc. No. 50], however, the Eleventh Amendment does not preclude claims against state officials for prospective, injunctive relief to stop ongoing violations of federal law. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908). Indeed, in such cases, a federal court may require a state officer to prospectively comply with federal law, even when that compliance might require the state to expend funds. *See Milliken v. Bradley*, 433 U.S. 267, 289-90 (1977); *Antrican v. Odom*, 290 F.3d 178, 185 (4th Cir. 2002) ("But simply because the implementation of such prospective relief would require the expenditure of substantial sums of money does not remove a claim from the *Ex Parte Young* exception."). The focus must be "whether the injunctive relief sought is prospective or retroactive in nature." *Antrican*, 290 F.3d at 186; *see Zych v. Wrecked Vessel*, 960 F.2d 665, 669 (7th Cir. 1992) ("*Edelman* holds that courts may command public officials to obey the Constitution and federal statutes as they carry out their duties in the future but may not direct them to invade the state treasury to make good for past misdeeds.").

Plaintiffs here are seeking equitable relief requiring defendant Norwood to process applications and furnish timely benefits. Although defendant has attempted to characterize plaintiffs' requested relief as payment for past due services, the actual violation that plaintiffs seek to correct is the state's ongoing failure to meet Medicaid's timeliness standards. Plaintiffs are not seeking to impose any new liabilities on the state of Illinois; they seek only to force the state to provide whatever services or payments are due with reasonable promptness. This requested relief closely resembles what the Tenth Circuit recognized as permissible under the Eleventh Amendment in *Lewis v. New Mexico Dep't of Health*, 261 F.3d 970 (10th Cir. 2001), a case concerning New Mexico's delayed provision of Medicaid waiver services. There the court affirmed a district court's order denying a motion to dismiss on Eleventh amendment grounds. The court held:

> The plaintiffs in the case before us clearly seek prospective equitable relief: they ask that state officials be compelled to comply with federal statutes that allegedly entitle them to the reasonably prompt provision of waiver services. They are not, for example, asking to be reimbursed for past home or community-based services. The relief sought simply requires that officials conform their future actions to federal law ... and any effect on the state treasury is, therefore, ancillary.

*Lewis*, 261 F.3d at 977–78 (10th Cir. 2001) (omitting internal quotation marks and citations). Because the *Lewis* plaintiffs'

requested injunctive relief concerned the state's future conduct with respect to timeliness, it was sufficiently prospective to fit within the *Ex Parte Young* exception.

Similarly, plaintiffs' request to enjoin defendant Norwood's future processing of long-term care benefit claims is sufficiently forward-looking. Plaintiffs have identified ongoing violations of the Medicaid Act and its implementing regulations by providing evidence of claims that have remained pending for greater than twelve months. While the Eleventh Amendment does not permit a damages award against the state for these past due payments, this court, acting within the limits of the *Ex Parte Young* exception, can craft injunctive relief compelling defendant Norwood's future compliance with Medicaid timeliness standards.

B. Irreparable Harm

To show irreparable harm, a moving party must demonstrate that, absent preliminary relief, she will suffer an injury that cannot be later rectified with "compensatory or other corrective relief." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Litigants will not meet the standard for irreparable harm if "money damages could make [them] whole again should [they] prevail" after a trial. *Rhoades*, 825 F.3d at 339. If moving parties, however, can show that without preliminary injunctive relief they will be denied necessary medical care, then they may

demonstrate that they lack an adequate remedy at law and stand to suffer irreparable injury. *See Bontrager v. Indiana Family & Soc. Servs. Admin.,* 697 F.3d 604, 611 (7th Cir. 2012); *O.B. v. Norwood*, 170 F. Supp. 3d 1186, 1196 (N.D. Ill. 2016), *aff'd*, 838 F.3d 837 (7th Cir. 2016).

The evidence before me reflects that patient plaintiffs all have significant outstanding balances at the nursing care facilities where they are residing, and that they cannot afford to pay for the care they are receiving. *See, e.g.,* Reis Decl. ¶¶ 3-5 [Doc. No. 35-3]; Crowder Decl. ¶¶ 3-5 [Doc. No. 35-6]. Meanwhile, the institutional plaintiffs state that they can no longer continue to provide care without payment. Reis Decl. ¶ 9; Crowder Decl. ¶ 9. Plaintiffs argue that in these circumstances, the patient plaintiffs face the threat of discharge, and that a preliminary injunction is appropriate because if they are in fact discharged and the nursing care they require is terminated, damages will not make them whole for the harms that will result.

Defendant responds that plaintiffs have not adequately shown that the nursing homes are taking steps toward involuntarily discharging the patient plaintiffs. Because they have not, defendants argue, the plaintiffs have an adequate remedy at law available in state court. It is true that plaintiffs have not asserted that the nursing homes have initiated the process of discharging the patients who are in

24

arrears. But this is not necessary. What is needed is a showing that plaintiffs face irreparable harm if forced to wait for post-trial relief. Plaintiffs have met this requirement by providing affidavits from several representatives of the institutional plaintiffs. According to these sworn statements, the facilities cannot continue to foot the patient plaintiffs' medical bills indefinitely. It is fair to infer from these statements that, without preliminary relief, patient plaintiffs may soon face discontinuation of their long-term care services. Potential termination of necessary medical care is enough to establish a risk of irreparable injury.[20] *See Bontrager,* 697 F.3d at 611; *Beltran v. Myers,* 677 F.2d 1317, 1322 (9th Cir. 1982); *O.B. v. Norwood*, 170 F. Supp. 3d at 1196. This is not a risk to which these elderly and disabled patients should be subjected.

C. Balance of Equities and the Public Interest

Finally, plaintiffs must show that the balance of the equities tips in their favor and that an injunction is in the public interest. *Winter*, 555 U.S. at 20. "During the balancing phase of the preliminary injunction analysis, the goal of the court is to choose the course of action that minimizes the costs of being mistaken." *Girl Scouts*, 549 F.3d at 1100. Courts therefore "compare the potential irreparable harms faced by both

---

[20] Obviously, claims on behalf of deceased plaintiffs cannot satisfy the irreparable harm requirement and will therefore not be included in any preliminary injunctive relief.

parties to the suit — the irreparable harm risked by the moving party in the absence of a preliminary injunction against the irreparable harm risked by the nonmoving party if the preliminary injunction is granted" — to determine where the greater potential harm lies. *Id.* Courts weigh the public interest by evaluating the "consequences of granting or denying the injunction to non-parties." *Abbott Labs.,* 971 F.2d at 12.

Here, defendant Norwood merges her balance of equities and public interest arguments. She argues that a preliminary injunction would disserve the public interest and harm the state of Illinois because it would risk improper eligibility determinations and would place further strain on the "already tenuous" state budget. Def.'s Op. at 16-17 [Case No. 1:16-cv-9837, ECF. No. 37]. Plaintiffs counter that the public interest weighs in favor of the patient plaintiffs, who are elderly and disabled Illinois residents, receiving the eligibility determinations and timely benefits to which they claim they are entitled while this case is pending. A preliminary injunction, plaintiffs argue, will require the defendant to do only what the law already requires her to do.

Plaintiffs have the better argument. The public has an interest in ensuring that Medicaid eligible individuals promptly receive necessary medical services. This, after all, is why Medicaid exists. Illinois elected to participate in the Medicaid

program and to accept federal funds for the purpose of providing medical assistance to its needy citizens. There is a public interest in making sure the state's designated Medicaid agency complies with federal law. These interests are not outweighed by any ancillary impact this preliminary relief may have on the state's budget. *Bontrager*, 697 F.3d at 611 ("The State's potential budgetary concerns are entitled to our consideration, but do not outweigh the potential harm to [plaintiff] and other indigent individuals, especially when the State's position is likely in violation of state and federal law.").

Weighing all of these factors together, I find that the plaintiffs are entitled to preliminary injunctive relief.

III.

For the foregoing reasons, plaintiffs' motion for a preliminary injunction is granted in part. Defendant Norwood is hereby ORDERED to determine eligibility for certain patient plaintiffs' Medicaid or long-term care applications that have been pending for more than ninety days and to notify the applicants or their authorized representatives by October 16, 2017. This includes all applications for A. Martinez, S. Vogel, J. Watson, B. Noel, G. Ostermueller, D. Jones, M. Urban, and B. Lawrence. I will not grant plaintiffs' request for presumptive eligibility. This was appropriate in *Smith v. Miller*, 665 F.2d 172 (7th Cir. 1981), a statewide class action, as a means of

avoiding continual monitoring. *Id.* at 180. That is not a concern here where we are dealing with eight specific individuals.

Defendant Norwood must additionally bring HFS's claims processing procedures into compliance with 42 U.S.C. § 1396a(a)(8)'s reasonable promptness requirement and the timely payment provisions of 42 C.F.R. § 447.45. Defendant Norwood is hereby ORDERED, with respect to the twenty-seven identified patient plaintiffs and the *Heritage* class, to prospectively process claims for payment of services within twelve months of having notice of those claims. Defendant will be deemed to have notice either on (1) the date a claim is received or (2) for claims for services predating December 1, 2016, the date of services, so long as the patient plaintiff at issue had an application for long-term care services approved or pending for more than ninety days at the time of those services that would have put the agency on notice of the claim. The state must provide medical assistance to eligible individuals with reasonable promptness, and HFS's own administrative delays may not prevent timely payment of claims.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 1, 2017